**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                                    **No. 1:24-cr-00110-MPM-DAS**

**LEXUS SANCHEZ WEAVER**                                                        **DEFENDANT**

**<u>MEMORANDUM OPINION</u>**

This cause comes before the Court on the United States Court of Appeals for the Fifth Circuit's reverse and remand, *United States v. Weaver*, 171 F.4th 780 (5th Cir. 2026), and on Defendant Lexus Sanchez Weaver's (second) Motion to Suppress [69] all physical evidence and statements, re-alleging that they were obtained in violation of the Fourth and Fifth Amendments of the United States Constitution. The Government has responded in opposition to the motion [70] and Mr. Weaver filed a rebuttal [71]. The Court, having carefully considered the applicable law and the proof and arguments presented at the suppression hearing, is now prepared to rule.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On March 7, 2024, Starkville Police Officer Garrett Mittan requested a search warrant from Municipal Court Judge Brian Kelley to search Mr. Weaver's residence for evidence of crack cocaine, other controlled substances, fraud and money laundering. *See* [28] at 1. Based on the drugs and firearms recovered from his residence, a federal grand jury indicted Mr. Weaver for drug distribution, possession of a firearm in furtherance of a drug trafficking crime, and felon in possession of a firearm. *See* [1]. Following the indictment, on February 25, 2025, Mr. Weaver filed a motion to suppress [19] both the evidence found during the search and statements he gave to law enforcement following the search. Following an evidentiary hearing on the motion, this

Court suppressed both the evidence found at Mr. Weaver's residence and his statements to law enforcement. *See* [17].

The Government appealed and the Fifth Circuit reversed and remanded, finding that the evidence found at Mr. Weaver's residence should not have been suppressed because Officer Mittan's affidavit falls within the good-faith exception, and also finding that Mr. Weaver did not expressly waive his *Miranda* rights. *See United States v. Weaver*, 171 F.4th 780 (5th Cir. 2026). The court left open the question of whether Mr. Weaver implicitly waived his *Miranda* rights before his confession and remanded to this Court for a factual finding of this issue. *Id.* at 788.

On June 26, 2026, Mr. Weaver filed a second Motion to Suppress [69], attacking the validity of the search warrant on two additional grounds, arguing that the good faith exception does not apply, and that Officer Mittan's signature authorizing the search warrant on behalf of the judge renders it invalid. Mr. Weaver also requests this Court to make a finding of whether Mississippi Supreme Court Emergency Orders issued in the wake of COVID-19 are still validly in place and enforceable. The Government responded in opposition [70] and Mr. Weaver filed a rebuttal in support of his motion [71]. The rebuttal further requests this Court to find that Officer Mittan's deceptive reading of *Miranda* rights not only renders Mr. Weaver's express waiver invalid, but that it infects the entire proceeding, mandating a finding of invalid implied waiver.

## II. STANDARDS OF REVIEW

### A. Search Warrants

When evaluating a motion to suppress evidence, the "defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was

unconstitutional." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005). The court conducts a two-step inquiry when assessing a motion to suppress evidence secured pursuant to a search warrant: "(1) whether the good-faith exception to the exclusionary rule applies, and (2) whether the warrant was supported by probable cause." *United States v. Cisneros*, 112 F.3d 1272, 1278 (5th Cir. 1997). If the good-faith exception applies, the court need not address the probable cause inquiry. *Id*. The good-faith exception allows the admission of evidence obtained by officers in objectively reasonable good-faith reliance on a search warrant, even though the affidavit supporting the warrant lacked probable cause. *Id.*

## B. *Miranda* Waivers

Due to the inherently coercive nature of a custodial interrogation, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). These procedural safeguards require that the accused "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id*.

The government bears the burden of proving by a preponderance of the evidence that a defendant was informed of his *Miranda* rights and that he effectively waived those rights. *Berghuis v. Thompkins*, 560 U.S. 370, 383-84 (2010). For a waiver to be legally valid, the government must demonstrate that a defendant knowingly and intelligently waived his privilege against self-incrimination. *Id.* This inquiry has two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision

to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

A *Miranda* waiver can be made either expressly or impliedly. *Berghuis*, 560 U.S. at 384. A valid waiver does not need to be expressly made, it may also be "implied through 'the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver.'" *Id.* To show an implied waiver, the government cannot merely show that a "*Miranda* warning was given and the accused made an uncoerced statement." *Id.* Rather, "[t]he prosecution must make the additional showing that the accused understood these rights." *Id.* "The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." *Miranda*, 384 U.S. at 475 (quoting *Carnley v. Cochran*, 369 U.S. 506, 516 (1962) (internal citations omitted)).

## III.   ANALYSIS

### A.  Fourth Amendment: Search Warrant

On appeal, the Fifth Circuit analyzed the sufficiency of the search warrant obtained by Officer Mittan solely on the third ground of *Leon*'s four good faith exceptions. It found that the affidavit drafted by Officer Mittan was not bare bones and thus the good faith exception applied. *Weaver*, 171 F.4th at 786-87. Mr. Weaver now attempts to revisit the sufficiency of the search warrant based on *Leon*'s first ground that the affidavit contained knowingly false information and *Leon*'s second ground that the magistrate wholly abandoned the judicial role. *See United States v. Leon*, 468 U.S. 897, 923 (1984).

4

The law constrains our analysis of whether reliance on the warrant was unreasonable to only four circumstances:

 1) the magistrate issued [the warrant] based on information the affiant knew was false or should have known was false but for reckless disregard of the truth; 2) the magistrate wholly abandoned the judicial role; 3) the warrant is based on an affidavit so lacking in probable cause as to render belief in its existence unreasonable; and 4) the warrant is facially deficient in particularizing the place to be searched or things to be seized.

*United States v. Morton*, 46 F.4th 331, 336 (5th Cir. 2022) (en banc).

As pointed out by Mr. Weaver during the second hearing, two of three statements of the controlled buys are cut and paste, literal word for word duplicates of each other, which by definition he argued, lacks particularity. In short, they were poorly written. "Prior to and after each purchase, CI was searched for money and contraband with none being found[,]" [28] at 3, simply does not describe criminal behavior and raises serious doubts that the two separate transactions could be recorded in identical language, when each had been independently observed and documented. Officer Mittan further testified at the initial hearing that he in fact did not put in his affidavit that any drugs were found on the CI post buy, and that such language was an oversight on his part. *See* [29] at 25. This account, standing alone, might well support the inference Mr. Weaver draws from it. Nonetheless, the Fifth Circuit has already instructed this Court as to how to read this affidavit.

The Fifth Circuit found that "although Officer Mittan's procedures could have benefitted from drug authentication, that is not the minimum requirement in this court," and that the affidavit contained sufficient details of the first controlled buy and details about the officers' investigation stemming from the CI's tip, including the type of drug, the controlled-buy process for the three buys, a conversation among the CI and Mr. Weaver, and a named third individual, among other details. *Weaver*, 171 F.4th at 786. One of the three statements of prior acts was

5

facially correct; that is enough. The other two controlled-buy descriptions may as well have been describing a Bob Ross painting: we don't make mistakes, just happy little accidents. More to the point, the Fifth Circuit repeatedly and expressly characterized the events described in the affidavit as "controlled buys" of crack cocaine, finding that "three controlled buys using the CI subject to continuous surveillance by law enforcement … formed the basis of the affidavit." *Id.* at 783-84, 786.

Prudence suggests that this conclusion by the Fifth Circuit on this point is final as to this case. The Government's briefing points to the law of the case doctrine, where "the district court on remand . . . abstains from reexamining an issue of fact or law that has already been decided on appeal." *United States v. Teel*, 691 F.3d 578, 582 (5th Cir. 2012). This doctrine flows directly from the mandate rule, which obliges the district court to carry out both the letter and the spirit of the appellate court's mandate. *Id.* Although the Fifth Circuit confined its holding to the third *Leon* ground because that was the ground on appeal, its finding that three controlled buys occurred and formed the factual basis for the warrant forecloses Mr. Weaver's renewed argument that the affidavit contained information Officer Mittan knew or should have known was false. The incompleteness of the incident report for the third buy, a document available to Mr. Weaver at the original evidentiary hearing, does not disturb that finding. Officer Mittan testified at the initial hearing, without contradiction, that all three buys occurred. And even setting the third buy aside altogether, the Fifth Circuit's finding of sufficiency did not rest on the number of buys but on the totality of detail and other corroborating evidence in the affidavit. *Weaver*, 171 F.4th at 786.

Mr. Weaver's argument that Judge Kelley abandoned his judicial role travels the same road to the same dead end. The Fifth Circuit already considered, and rejected, the related

6

objection that Officer Mittan signed the warrant on Judge Kelley's behalf over FaceTime, holding that Judge Kelley acted in compliance with a still-effective Mississippi Supreme Court Emergency Order, and that in any event "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* at 786 n.3 (quoting *Leon*, 468 U.S. at 921). For the same reason, Mr. Weaver's renewed request that this Court independently determine whether the Mississippi Supreme Court's COVID-era Emergency Order remained in effect is unnecessary; the Fifth Circuit has already found, twice, that the Order was in effect when Judge Kelley approved the warrant in March of 2024. *Weaver*, 171 F.4th at 784 n.1, 786 n.3.

None of this means the Court is satisfied with the procedures effected below. A search-warrant affidavit is not a form to be filled in by rote and a magistrate's role in reviewing one is not merely ceremonial. Officer Mittan's affidavit, and the manner of its approval, reflect standards this Court hopes never to see repeated in this district, and this opinion should not be read as anything other than the Court's plain disapproval of both. But the Fifth Circuit has spoken as to the sufficiency of this particular affidavit, and this Court is bound to follow both the letter and the spirit of its mandate. *Teel*, 691 F.3d at 582. Mr. Weaver's Second Motion to Suppress [69] is therefore DENIED as to the search warrant.

### B. Fifth Amendment: *Miranda* Waiver

Every signpost on the road to truth has two simple jobs: to point, and to point truly. As explained below, Officer Mittan's *Miranda* form did the first and failed at the second. The Court must now decide what that failure means for Mr. Weaver's confession.

The only question the Fifth Circuit left for this Court to decide on remand is whether Mr. Weaver impliedly waived his *Miranda* rights. *Weaver*, 171 F.4th at 788. Both parties agree that

Officer Mittan read Mr. Weaver each of the substantive *Miranda* rights while pointing to each on the form, and asked Mr. Weaver whether he understood them, to which he answered in the affirmative. *Id.* at 784. What Officer Mittan did not read, and did not otherwise mention, was the separate "Waiver of Rights" paragraph[1] beneath the printed rights themselves, and he asked Mr. Weaver to sign only as an acknowledgment that his rights had been read to him. *Id.* This, the Government contends and the Court agrees, is the conduct which the Fifth Circuit found "deceptive," and it held, in agreement with this Court's earlier determination, that the deception defeated the voluntariness of Mr. Weaver's express waiver. *Id.* at 788. That finding resolves the express waiver. It does not resolve whether Mr. Weaver's later, independent course of conduct, after the signing, and before any question about the offense was asked, separately reflects a choice to speak.

Mr. Weaver argues the inquiry should end there, contending that the same deception means no valid *Miranda* warning was ever given at all, and that an invalid or defective warning forecloses implied waiver as a matter of law. He relies on *United States v. Romero-Medrano*, 207 F. Supp. 3d 708 (E.D. Tex. 2016), where the court found no implied waiver because the agents never asked, and the defendant never confirmed, that he understood his rights before questioning began. *Id.* at 714-15. That case, however, describes a different failure than the one before this Court. In *Romero-Medrano*, the defendant was never asked whether he understood

---

[1] The unread "Waiver of Rights" paragraph stated:

> I (have read) or (had read to me) this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

[28] at 9.

8

his rights at all. *Id.* at 714. Here, Officer Mittan asked Mr. Weaver directly whether he understood the rights just read to him, to which he responded in the affirmative, before a single question about the offense was posed. *See* [19] Ex. 2; *see also Weaver*, 171 F.4th at 784. Thus, the deception arrived later, in the paragraph beneath the rights themselves, not within them. The Court therefore declines to revisit the validity of the *Miranda* warning.

An implied waiver requires more than proof that rights were recited and understood in isolation. It requires the government to show that the defendant's subsequent, uncoerced statement reflected a course of conduct indicating he was choosing to relinquish those rights, not merely declining to invoke them. *Berghuis*, 560 U.S. at 384-85. That determination requires a fact-specific inquiry into the background, experience, and conduct of the accused. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Neither party has directed this Court to evidence concerning Mr. Weaver's age, education, or prior experience with law enforcement. The record here therefore speaks only to his conduct during the interview, which both sides have briefed.

The Government points to Mr. Weaver's calm, hour-long, cooperative conversation with officers as proof of that choice. *Weaver*, 171 F.4th at 784. That conversation, Mr. Weaver argues, is the same one in which Officer Mittan told him his signature meant only that his rights had been read to him, not that he was giving them up. The Court is not persuaded that the two are the same conversation. Unlike in *Romero-Medrano*, where the agent moved directly from the recitation of the *Miranda* rights into substantive questioning,[2] Officer Mittan's exchange did

---

[2] RG [Agent Guerra]: Ah, You have the right to remain silent; anything you say can be used against you in court. You have the right to talk to attorney for advice, before we ask you any questions.

KY [Defendant]: Unh-huh.

not proceed in one continuous motion. While Mr. Weaver signed the form, Officer Mittan paused for the several seconds it took Mr. Weaver to finish signing, then told him "… we got some interesting stories from the eight people that we interviewed today and we kind of want to get your side of the story …," before asking his first question: "are you working anywhere?" *See* [21] Ex. G. That introductory statement was not itself an interrogation question. It was an invitation, separate from the signing, that Mr. Weaver could have declined. His decision to answer came only after that invitation, not as an unbroken continuation of the deceptive signing itself.

The video corroborates this separation. Notably, Mr. Weaver's demeanor throughout is unhurried, not the reaction of someone swept along without an opportunity to reflect. *See* [21] Ex. G. He clearly understood the situation and was familiar with the procedures. In fact, he twice asked officers to let him sit on the couch instead of the chair because his back hurt. This shows Mr. Weaver was aware of his sense of agency and that he understood he could ask for what he wanted. That same willingness to speak up carried into his answers once Officer Mittan's questions began.

The Court finds that notwithstanding the deception that defeated Mr. Weaver's express waiver, the separation between the signing and the first substantive question, together with Mr. Weaver's demeanor and conduct throughout the interview, establishes that he impliedly waived his *Miranda* rights. His post-arrest statements to law enforcement are therefore admissible.

---

RG: You have the right to attorney, whe- you have the right to have an attorney with you during questioning. Ah, if you can't afford a lawyer one will be appointed for you. Ah, if you decide to answer questions now without a lawyer present, you have the right to stop anytime. Ah**, How long have you lived here?**

207 F. Supp. 3d at 714-15 (internal citations omitted and emphasis added).

## IV.    CONCLUSION

For the reasons stated above,

IT IS, THEREFORE, ORDERED that, Defendant's (second) Motion to Suppress [69] is DENIED. The evidence seized pursuant to the search warrant remains admissible.

IT IS FURTHER ORDERED that, on remand from the Fifth Circuit as to Defendant's Motion to Suppress [19], the Court finds that Mr. Weaver impliedly waived his *Miranda* rights. To that extent, Motion [19] is DENIED and Mr. Weaver's post-arrest statements are admissible.

SO ORDERED, this the 12th day of August, 2026.

  /s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI